UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| **DEBORAH F. OXENDINE,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:20-cv-00764 |
| | ) |
| **ROBERT C. BRYAN and JOHN DOES 1-10,** | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

Deborah F. Oxendine, a Tennessee resident, filed a *pro se* complaint under 42 U.S.C. § 1983 against Wilson County Sheriff Robert C. Bryan and John Doe medical personnel at the Wilson County Jail.[1] (Doc. No. 1.) She also filed an application to proceed in this Court without prepaying fees and costs. (Doc. No. 2.) The case is before the Court for a ruling on the application and initial review of the Complaint.

**I.      Application for Leave to Proceed as a Pauper**

The Court may authorize a person to file a civil suit without paying the filing fee. 28 U.S.C. § 1915(a). Oxendine, a 57-year old woman, has a small income from disability insurance that roughly equals her basic monthly expenses. (Doc. No. 2). She avers that she has "no money left at the end of the month to pay anything." (Id. at 5.) Oxendine reports no bank account balance or assets. (Id. at 2-3.) Further, she reports no significant discretionary expenses. (Id. at 4-5.) It

---

[1] The Complaint identifies the medical personnel Defendants as both "Medical Department Co. Name Unknown" and "Medical Department & Staff for Wilson County Jail (Unknown)." (See Doc. No. 1 at 1-2.) It is permissible for Oxendine to name John Doe Defendants at this point in the case. To simplify matters, the Court will order the Clerk to alter the docket to refer to these Defendants as "John Does 1-10." For all future filings in this case, the parties shall use the above revised caption.

therefore appears from Oxendine's application that she cannot pay the full civil filing fee in advance without undue hardship. Accordingly, the application will be granted.

## II.  Initial Review of the Complaint

The Court must conduct an initial review of the complaint and dismiss any action filed *in forma pauperis* if it is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see also* McGore v. Wrigglesworth, 114 F.3d 601, 608 (6th Cir. 1997) (holding the screening procedure established by § 1915(e) also applies to *in forma pauperis* complaints filed by non-prisoners), *overruled on other grounds by* Jones v. Bock, 549 U.S. 199 (2007).

### A.  Standard of Review

In reviewing the complaint, the Court applies the same standard as under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Hill v. Lappin, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, "a district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." Tackett v. M & G Polymers, USA, LLC, 561 F.3d 478, 488 (6th Cir. 2009) (citing Gunasekera v. Irwin, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). The Court must then consider whether those factual allegations "plausibly suggest an entitlement to relief," Williams v. Curtin, 631 F.3d 380, 383 (6th Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 681 (2009)), that rises "above the speculative level," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). The Court need not accept as true "unwarranted factual inferences," DirectTV, Inc. v. Treesh, 487 F.3d 471, 476 (6th Cir. 2007) (quoting Gregory v. Shelby Cty., 220 F.3d 433, 446 (6th Cir. 2000)), and "legal conclusions masquerading as factual allegations will not suffice." Eidson v. Tenn. Dep't of Children's Servs., 510 F.3d 631, 634 (6th Cir. 2007).

2

"*Pro se* complaints are to be held to less stringent standards than formal pleadings drafted by lawyers, and should therefore be liberally construed." Williams, 631 F.3d at 383; Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citing Estelle v. Gamble, 429 U.S. 97 (1976)). Even under this lenient standard, however, *pro se* plaintiffs must meet basic pleading requirements and are not exempted from the requirements of the Federal Rules of Civil Procedure. Martin v. Overton, 391 F.3d 710, 714 (6th Cir. 2004); Wells v. Brown, 891 F.2d 591, 594 (6th Cir. 1989); *see also* Young Bok Song v. Gipson, 423 F. App'x 506, 510 (6th Cir. 2011) (explaining the role of courts is not "to ferret out the strongest cause of action on behalf of *pro se* litigants" or to "advis[e] litigants as to what legal theories they should pursue").

**B.     Factual Background**

Liberally construing the Complaint, Oxendine alleges that, beginning on September 7, 2019, Wilson County Jail ("WCJ") medical personnel administered medicine that "she can't take" and failed to "detox [her] from alcohol." (Doc. No. 1 at 4.) Oxendine further alleges that when she sought treatment for a "cancer that was growing on her privates," and told medical staff that "something was wrong down there," WCJ medical staff refused "to even look", did "nothing to help her" and, instead, held her down "naked" and administered "shot[s]" to "knock her out." (Id.) She alleges that WCJ staff and inmates could "see [her] naked" because the medical personnel would not give her give anything to wear. (Id.) Finally, Oxendine alleges that WCJ medical staff "left" her in soiled clothes in a cell with "no toilet paper" and no way "to clean herself" for "almost a month," during which time the staff "laughed at" Oxendine and "talked bad" to her. (Id.) In total, Oxendine alleges that, despite her requests, she received no medical assistance "at all" for "for at least 30 days." (Id.) Oxendine later had to have surgery for the "cancer in her privates," and she was treated for post-traumatic stress disorder resulting from her experience at the WCJ. (Id. at 5.)

3

**C.     Analysis**

Section 1983 creates a cause of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. Wurzelbacher v. Jones-Kelley, 675 F.3d 580, 583 (6th Cir. 2012). Thus, to state a Section 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution or laws of the United States, and (2) that the deprivation was caused by a person acting under color of state law. Carl v. Muskegon Cty., 763 F.3d 592, 595 (6th Cir. 2014).

Liberally construing the allegations of the Complaint, Oxendine brings individual and official capacity Section 1983 claims against Wilson County Sheriff Robert C. Bryan and John Doe WCJ medical staff based upon unconstitutional conditions of confinement, deliberate indifference to a serious medical need, and First Amendment retaliation.[2]

1.     Official Capacity Claims

"[I]ndividuals sued in their official capacities stand in the shoes of the entity they represent." Alkire v. Irving, 330 F.3d 802, 810 (6th Cir. 2003) (citing Kentucky v. Graham, 473 U.S. 159, 165 (1985)). Here, Sheriff Bryan and the John Doe WCJ medical personnel represent Wilson County. Thus, Oxendine's official-capacity claims are effectively claims against Wilson County, Novatne v. Elrod, No. 3:19-cv-00821, 2020 WL 1666516, at *3 (M.D. Tenn. Apr. 3, 2020), which is subject to suit under Section 1983. See Hadrick v. City of Detroit, Mich., 876 F.3d 238, 243 (6th Cir. 2017) (citing Monell, 436 U.S. at 690-92). However, under Section 1983 the County cannot be held liable under a theory of *respondeat superior* or vicarious liability. Connick

---

[2] Oxendine indicates that she sues the Defendants in their official capacities. Liberally construing the Complaint, however, the Court concludes that Oxendine intends to sue the Defendants in both their individual and official capacities, for two reasons. First, the lack of sophistication of the Complaint indicates that Oxendine may misunderstand the distinction between these terms. Second, liberally-construed, Oxendine's claims and prayer for relief provide notice that she intends to sue the Defendants in both capacities.

v. Thompson, 563 U.S. 51, 60 (2011). Rather, Oxendine must allege: (1) that she suffered a constitutional violation; and (2) that a policy or custom of Wilson County directly caused the violation. See Burgess v. Fischer, 735 F.3d 462, 478 (6th Cir. 2013); Hadrick, 876 F.3d at 243 (citing Monell, 436 U.S. at 690-92).

Here, Oxendine alleges that Wilson County employees violated her rights in several ways over the course of at least 30 days in 2019. However, Oxendine makes no allegation of any custom or policy of Wilson County behind the alleged constitutional violations. These allegations are insufficient to plausibly state a Section 1983 claim against Wilson County. Accordingly, Oxendine's official-capacity claims must be dismissed for failure to state a claim.

### 2. Individual-Capacity Claim Against Sheriff Bryan

"Persons sued in their individual capacities under § 1983 can be held liable based only on their own unconstitutional behavior." Heyerman v. Cnty. of Calhoun, 680 F.3d 642, 647 (6th Cir. 2012); Hall v. Trump, No. 3:19-cv-00628, 2020 WL 1061885, at *5 (M.D. Tenn. Mar. 5, 2020); see also Murphy v. Grenier, 406 F. App'x 972, 974 (6th Cir. 2011) ("Personal involvement is necessary to establish section 1983 liability."). Because there is no *respondeat superior* liability under Section 1983, supervisory officials are not liable in their individual capacities unless they "either encouraged the specific incident of misconduct or in some other way directly participated in it." Hall, 2020 WL 1061885, at *5 (citing Hays v. Jefferson Cnty., Ky., 668 F.2d 869, 874 (6th Cir. 1982)). Supervisory officials who are aware of the unconstitutional conduct of their subordinates but fail to act generally cannot be held liable in their individual capacity. Grinter v. Knight, 532 F.3d 567, 575-76 (6th Cir. 2008); Gregory v. City of Louisville, 444 F.3d 725, 751 (6th Cir. 2006).

5

Here, there is no allegation that Bryan encouraged or participated in any of the alleged constitutional violations. Indeed, Bryan is never mentioned in the Complaint aside from being named as a Defendant. To the extent Oxendine seeks to impose liability on Bryan because he holds a supervisory position over the WCJ or was aware of the relevant events, the mere implication that Bryan may have failed to act in a corrective fashion is insufficient to state a claim for individual liability. Accordingly, Oxendine's individual-capacity claims against Bryan must be dismissed.

3. Individual-Capacity Claims Against John Doe WCJ Medical Personnel

a. Conditions of Confinement

The legal standard for Oxendine's conditions of confinement claim depends upon whether she was a pretrial detainee or a convicted prisoner at the time of the alleged events, something that is not clear from the Complaint. For prisoners, the Eighth Amendment's bar against cruel and unusual punishment imposes a duty upon WCJ officials to "ensure that inmates receive adequate food, clothing, shelter, and medical care" to guarantee prisoner safety. Farmer v. Brennan, 511 U.S. 825, 832 (1994). A claim that WCJ officials have failed to meet this obligation requires: (1) a "sufficiently serious" deprivation that falls below a "minimal civilized measure of life's necessities," and (2) "deliberate indifference to inmate health or safety." Hamby v. Gentry, No. 3:12-CV-01296, 2013 WL 3315494, at *5 (M.D. Tenn. July 1, 2013) (quoting Spencer v. Bouchard, 449 F.3d 721, 727 (6th Cir. 2006)); Mingus v. Butler, 591 F.3d 474, 479-80 (6th Cir. 2010). For pretrial detainees, the Fourteenth Amendment's due process clause precludes "punish[ment] prior to an adjudication of guilt." Bell v. Wolfish, 441 U.S. 520, 535 (1979). A pretrial detainee can demonstrate that he was subjected to unconstitutional punishment by showing: (1) "an expressed intent to punish on the part of the detention facility officials," or (2) that "a restriction or condition is not rationally related to a legitimate government objective or is

6

excessive in relation to that purpose." J.H. v. Williamson Cty., 951 F.3d 709, 717 (6th Cir. 2020) (citing Bell, 441 U.S. at 535 and Kingsley v. Hendrickson, 576 U.S. 389, 398 (2015)).

The Court finds that Oxendine's allegations are sufficient to state a claim under either standard. Courts have noted that whether or not prison "discomforts and inconveniences," including having to wear soiled clothes, are "conditions intolerable for prison confinement" turns on the seriousness and duration of the deprivation. Minor or passing deprivations are typically not actionable. See, e.g., Miller v. Wertanen, 109 F. App'x 64, 65 (6th Cir. 2004) (one-time deprivations of books, linens, food trays, and mail); Richmond v. Settles, 450 F. App'x 448, 455 (6th Cir. 2011) (denial of running water for less than one week). However, longer deprivations may state a constitutional claim. See, e.g., Powell v. Washington, 720 F. App'x 222, 228-29 (6th Cir. 2017) (deprivation of light in cell for 35 days); Kirby v. Jordan, No. 3:15-cv-00866, 2015 WL 4984855, at *2-3 (M.D. Tenn. Aug. 19, 2015) (deprivation of meals "on a number of occasions"); Grubbs v. Bradley, 552 F. Supp. 1052, 1131 (M.D. Tenn. 1982) (confinement for more than one week without hot water).

Here, Oxendine does not allege an isolated incident or temporary deprivation. Rather, she alleges that WCJ medical staff knowingly kept her sedated in soiled clothing, with no way to clean herself, for at least four weeks, during which time they made fun of her. In addition, Oxendine has also alleged a deprivation of rights in connection with being kept naked where she could be seen by staff and other inmates on multiple occasions, including when being sedated. Under the Eighth Amendment, Oxendine has alleged sufficiently serious deprivations that falls below "a minimal civilized measure of life's necessities." Hamby, 2013 WL 3315494, at *5; see also Hunter v. Helton, No. 1:10-cv-00021, 2010 WL 2405092, at *4 (M.D. Tenn. June 10, 2010) (finding pro se plaintiff stated a colorable conditions of confinement claim based on being made to unwittingly

7

"expose his person" to other inmates and visitors). Under the due process clause of the Fourteenth Amendment, Oxendine has alleged deprivations that were either intended to punish or were not rationally related to a government purpose or excessive in relation to that purpose. J.H., 951 F. at 717. Finally, Oxendine alleges that she suffers from post-traumatic stress disorder as a result of these experiences. See Chaffins v. Lindamood, No. 1:17-cv-00061, 2017 WL 3130558, at *3 (M.D. Tenn. July 24, 2017) (conditions of confinement plaintiff must allege injury or harm). These allegations are sufficient, at this early stage, to allow Oxendine's conditions of confinement claim to proceed for further development.

b. Deliberate Indifference to Serious Medical Need

"[D]eliberate indifference to serious medical needs of prisoners constitutes 'the unnecessary and wanton infliction of pain' that is violative of the Constitution."[3] Darrah v. Krisher, 865 F.3d 361, 367 (6th Cir. 2017) (quoting Estelle, 429 U.S. at 104, 105). "A constitutional claim for deliberate indifference contains both an objective and a subjective component. The objective component requires a plaintiff to show the existence of a 'sufficiently serious' medical need." Dominguez v. Corr. Med. Servs., 555 F.3d 543, 550 (6th Cir. 2009) (quoting Farmer, 511 U.S. at 834). For the subjective component, a plaintiff must allege that an official was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and . . . also dr[e]w the inference." Winkler v. Madison Cnty., 893 F.3d 877, 891 (6th Cir. 2018) (quoting Farmer, 511 U.S. at 837). "[N]egligence or negligent medical treatment are not actionable theories of liability" under Section 1983. Boldon v. Claiborne Cnty. Det. Ctr., No. 3:16-CV-441-TWP-

---

[3] "[A] prisoner's Eighth Amendment right is violated when prison doctors or officials are deliberately indifferent to the prisoner's serious medical needs," and the prisoner's health suffered as a consequence. Comstock v. McCrary, 273 F.3d 693, 702 (6th Cir. 2001). Pretrial detainees have a "right to adequate medical care" under the Fourteenth Amendment. Johnson v. Karnes, 398 F.3d 868, 874 (6th Cir. 2005). Regardless of how Oxendine's right to medical care at WCJ arose, same the deliberate indifference analysis applies. See Estelle, 429 U.S. at 104; Downard for Est. of Downard v. Martin, 968 F.3d 594 (6th Cir. 2020).

8

HBG, 2017 WL 4158612, at *6 (E.D. Tenn. Sept. 19, 2017) (citing Daniels v. Williams, 474 U.S. 327, 328-331 (1986)). Nor does a prisoner's difference of opinion regarding diagnosis or treatment rise to the level of a constitutional violation. Estelle, 429 U.S. at 107.

First, the Court finds that Oxendine has satisfied the objective component. A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Villegas v. Metro. Gov't of Nashville, 709 F.3d 563, 570 (6th Cir. 2013). "[W]hen an inmate had a medical need diagnosed by a physician as mandating treatment, the plaintiff can establish the objective component by showing that the prison failed to provide treatment, or that it provided treatment so cursory as to amount to no treatment at all." Rhinehart v. Scutt, 894 F.3d 721, 737 (6th Cir. 2018) (citations and internal quotation marks omitted). "But when an inmate has received on-going treatment for his condition and claims that this treatment was inadequate, the objective component of an Eighth Amendment claim requires a showing of care 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" Id. (quoting Miller v. Calhoun Cnty., 408 F.3d 803, 819 (6th Cir. 2005)).

Oxendine alleges that she sought medical help for "cancer" on her private parts and was denied examination and treatment by WCJ medical staff for over 30 days. "[C]ancer, whether in an active state or in remission, constitutes an objectively serious medical need." Wood v. Sehorn, No. 3-14-0617, 2014 WL 5454526, at *4 (M.D. Tenn. Oct. 27, 2014) (adopting report and recommendation) (citing Reilly v. Vadlamudi, 680 F.3d 617, 624 (6th Cir. 2012); Jones v. Muskegon Cnty., 625 F.3d 935, 942 (6th Cir. 2010)). Oxendine sufficiently alleges that the WCJ medical staff wholly refused to examine or treat her cancer. Even if Oxendine did not have a cancer diagnosis in hand or explain her condition in to WCJ medical personnel in express diagnostic

9

terms, she nonetheless alleges that WCJ medical staff, by refusing to examine her and giving her sedating injections when she sought care, acted in a wholly deficient manner that shocks the conscience.

Second, Oxendine satisfies the subjective component by alleging that she sought treatment for cancer and that the WCJ medical staff repeatedly and deliberately refused to examine or treat her. In sum, at this early stage of the case, the Complaint is sufficient to allege that the WCJ medical personnel either "failed to provide treatment, or . . . provided treatment so cursory as to amount to no treatment at all," Rhinehart, 894 F.3d at 737, or provided care "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Id. Finally, liberally construing the Complaint, Oxendine alleges she suffered detrimental effects from the Defendants' actions, including exacerbation of the existing symptoms leading to surgery for cancer and post-traumatic stress disorder. Accordingly, the Court finds, for purposes of PLRA initial review, that Oxendine has plausibly alleged a colorable claim of deliberate indifference to a serious medical need.[4]

### c. First Amendment Retaliation

To advance a First Amendment retaliation claim, Oxendine must plausibly allege that (1) she "engaged in protected conduct, (2) the defendant took an adverse action that is capable of deterring a person of 'ordinary firmness from continuing to engage in that conduct,' and (3) 'the adverse action was motivated at least in part by [her] protected conduct.'" Hill, 630 F.3d at 472 (quoting Thaddeus-X v. Blatter, 175 F.3d 378, 394, 398 (6th Cir 1999) (en banc)); Strader v. Cumberland Cnty., No. 2:19-cv-00045, 2020 WL 291383, at *10 (M.D. Tenn. Jan. 21, 2020). In Hill, the Sixth Circuit reversed the district court's dismissal of a First Amendment retaliation claim

---

[4] Oxendine should be prepared to offer additional evidence to support this claim as the case progresses.

on initial review, emphasizing that the essential elements of such a claim are not overly difficult to establish, "especially in light of the 'indulgent treatment' that '[c]ourts are instructed to give . . . to the 'inartfully pleaded' allegations of pro se . . . litigants." Hill, 630 F.3d at 471 (quoting Pasley v. Conerly, 345 F. App'x 981, 986 (6th Cir. 2009)). The Court of Appeals indicated that, where the facts alleged in a pro se complaint are sufficient to support these elements, the claim should go forward even if the plaintiff "fails to explicitly state" that he is making a First Amendment retaliation claim or does not "make an effective argument for that claim in his . . . complaint."[5] Id.

Oxendine is no longer a prison inmate. However, she alleges that as an WCJ inmate, she repeatedly sought medical treatment for cancer; WCJ medical personnel staff refused to "even look at" her; and, as a result, Oxendine "would get upset and tell them that something was wrong down there." (Doc. No. 1 at 4.) Oxendine further alleges that, in response to those pleas, WCJ medical personnel held her down and gave her injections to "knock [her] out" while at the same time exposing her naked to others.

Although Oxendine does not use the term "retaliation," after liberally construing the Complaint pursuant to Hill, the Court concludes that Oxendine states a nonfrivolous claim of First Amendment retaliation. First, Oxendine's efforts to seek medical care and complaints about the lack of medical care "are activities protected by the Constitution." Lumbard v. Lillywhite, 815 F. App'x 826, 834 (6th Cir. 2020) (citing Noble v. Schmitt, 87 F.3d 157, 162 (6th Cir. 1996)); Bumpus v. Howard, No. 3:19-CV-01081, 2020 WL 4431463, at *7 (M.D. Tenn. July 30, 2020). Second, the restraint and forcible medicating of a prisoner seeking medical care and complaining about the denial of medical care "would likely have a strong deterrent effect" on that prisoner's future attempts to seek care or complain about the lack of care. See Lumbard, 815 F. App'x at 834-

---

[5] Hill involved a pro se prisoner Complaint. The Court applies it here because Oxendine's pro se Complaint concerns events that occurred while she was incarcerated at the WCJ.

35 (citing Thaddeus-X, 175 F.3d at 398 (adverse action "threshold is intended to weed out only inconsequential actions, and is not a means whereby solely egregious retaliatory acts are allowed to proceed")). Finally, Oxendine has implicitly alleged that the punitive actions of WCJ medical personnel were motivated by a desire to either avoid treating Oxendine or to immediately conceal Oxendine's displeasure about inadequate medical care. See id. (explaining that a retaliation claim survives if a plaintiff "alleges facts that his protected activity was 'a motivating factor' behind the adverse action") (citing Thaddeus-X, 175 F.3d at 399); Hill, 630 F.3d at 475-76 (retaliatory motive can be supported by circumstantial evidence including "the temporal proximity between the prisoner's protected conduct and the official's adverse action") (citing Holzemer v. City of Memphis, 621 F.3d 512, 525-26, (6th Cir. 2010)). Accordingly, at this very early stage of the case, the Court concludes that Oxendine states a colorable First Amendment retaliation claim against the John Doe WCJ medical personnel.

### III. Conclusion

For these reasons, Oxendine's individual-capacity conditions of confinement, deliberate indifference to serious medical need, and First Amendment retaliation claims against John Doe WCJ medical personnel will be referred to the Magistrate Judge for further proceedings. All other claims will be dismissed. As provided in the accompanying Order, Oxendine will be required to specifically identify each John Doe defendant against whom relief is sought and must give each

defendant notice of the claims against him or her.

An appropriate Order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE